1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7  MARY E. WALKER,                    )
                                      )
8          Plaintiff,                 )        CASE NO. C03-2866-MJP
                                      )
9          v.                         )        REPORT AND
                                      )        RECOMMENDATION
10 JO ANNE BARNHART,                  )
   Commissioner of Social Security,   )
11                                    )
           Defendant.                 )
12 _____ )

13        Plaintiff Mary Walker appeals to the District Court from a final decision of the

14 Commissioner of the Social Security Administration (the "Commissioner") denying her

15 application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social

16 Security Act.  For the reasons set forth below, it is recommended that the Court **AFFIRM** the

17 Commissioner's decision.

18                              I.  PROCEDURAL HISTORY

19        Plaintiff filed her application for DIB on October 2, 2000.  Tr. 96-100.  She alleged that

20 she became disabled on September 1, 1999 (Tr. 99) because she suffers from chronic daily

21 migraines, chronic fatigue syndrome, and fibromyalgia.  Tr. 104, 145.

22        Plaintiff's application for DIB was denied initially (Tr. 58-59) and on reconsideration (Tr.

23 60-61).  She made a timely request for a hearing, which was held before an Administrative Law

24 Judge ("ALJ") Ruperta M. Alexis on April 11, 2002.  Tr. 25-57.  Plaintiff was represented by

25

26 REPORT AND RECOMMENDATION
   PAGE - 1

1   counsel and testified at the hearing.  Tr. 28-48.  A medical expert, Dr. James Burnell, also

2   testified at the hearing.  Tr. 49-56.  The ALJ issued a decision on June 11, 2002, finding that

3   Plaintiff was not disabled.  Tr. 15-24.  Plaintiff requested review, and on August 21, 2003, the

4   Appeals Council denied Plaintiff's request, making the ALJ's decision the final decision of the

5   Commissioner.  (Tr. 5-7).  Plaintiff timely filed her appeal with this Court.

6                                    II.  THE PARTIES' POSITIONS

7          Plaintiff requests that the Court reverse the ALJ's decision and award benefits, or in the

8   alternative, remand for a new hearing before a different ALJ.  Plaintiff argues that the ALJ erred

9   by: 1) improperly ignoring the opinions of Plaintiff's treating physicians; 2) improperly assessing

10  Plaintiff's credibility; 3) improperly assessing Plaintiff's residual functional capacity ("RFC"); and

11  4) failing to take into account the combined effects of Plaintiff's physical and mental impairment

12  in determining disability.  Defendant responds that the ALJ's decision should be affirmed because

13  it is supported by substantial evidence based on the medical record as a whole and is free of legal

14  error.

15                                    III.  STANDARD OF REVIEW

16         The court may set aside the Commissioner's denial of social security disability benefits

17  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

18  record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

19  defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

20  as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

21  881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

22  conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

23  1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 2

1    interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*,

2    694 F.2d 639, 642 (9th Cir. 1982).

3                              IV.  EVALUATING DISABILITY

4            The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d

5    1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

6    gainful activity by reason of any medically determinable physical or mental impairment, which

7    can be expected to result in death, or which has lasted or can be expected to last for a continuous

8    period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

9            The Social Security regulations set out a five-step sequential evaluation process for

10   determining whether claimant is disabled within the meaning of the Social Security Act.  *See* 20

11   C.F.R. § 416.1520.  At step one, the claimant must establish that he or she is not engaging in any

12   substantial gainful activity.  20 C.F.R. §§ 404.1520(b).  At step two, the claimant must establish

13   that he or she has one or more medically severe impairments or combination of impairments.  If

14   the claimant does not have a "severe" impairment, he or she is not disabled.  *Id.* at § (c).  At step

15   three, the Commissioner will determine whether the claimant's impairment meets or equals any

16   of the listed impairments described in the regulations.  A claimant who meets one of the listings

17   is disabled.  *See Id.* at § (d).

18           At step four, if the claimant's impairment neither meets nor equals one of the impairments

19   listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity

20   and the physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the

21   claimant is not able to perform his or her past relevant work, the burden shifts to the

22   Commissioner at step five to show that the claimant can perform some other work that exists in

23   significant numbers in the national economy, taking into consideration the claimant's residual

24   functional capacity, age, education, and work experience.  *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d

25

26   REPORT AND RECOMMENDATION
     PAGE - 3

1   1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant is unable to perform other

2   work, then the claimant is found disabled.

3                           V.  SUMMARY OF THE RECORD EVIDENCE

4          Plaintiff was first insured for DIB on July 1, 1999, and her last date insured will be

5   December 31, 2004.  Tr. 101.  She was 54 years old on the day of her hearing.  Tr. 28. Plaintiff

6   has a college degree in psychology and chemical dependency.  Tr. 29.  She previously worked as

7   a chemical dependency counselor.  Tr. 105.

8          Because the parties have adequately summarized the record in their briefing, the Court

9   will not summarize the record here.  Relevant evidence will be incorporated into the discussion.

10                                VI.  THE ALJ'S DECISION

11          At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

12   activity since the alleged onset of the disability.  Tr. 23.  At step two, the ALJ found that Plaintiff

13   has chronic fatigue syndrome, fibromyalgia and migraine headaches, impairments that are severe

14   within the meaning of the regulations.  Tr. 16, 23.  At step three, the ALJ concluded that the

15   claimant's impairments, both singly and in combination, do not meet or equal the criteria of any

16   of the listed impairments described in the regulations.  Tr. 20, 23.  At step four, the ALJ

17   determined that Plaintiff had the residual functional capacity ("RFC") to perform work not

18   requiring lifting or carrying more than 20 pounds occasionally and ten pounds frequently, sitting

19   more than six hours in an eight-hour day, standing and/or walking more than six hours in an eight

20   hour day, and more than occasional stooping, kneeling, crouching and climbing of ramps and

21   stairs.  Tr. 21, 23.  The ALJ also found that Plaintiff should avoid climbing ladders, ropes and

22   scaffolds, balancing and crawling.  *Id.*  She concluded that Plaintiff can perform her past relevant

23   work as a chemical dependency counselor, which did not require the performance

24

25   REPORT AND RECOMMENDATION

26   PAGE - 4

1    of work activities precluded by her RFC.  Tr. 22, 23.  Accordingly, the ALJ found that Plaintiff

2    was not disabled at step four of the five-step sequential evaluation process.

VII.  DISCUSSION

3

4    A.  TREATING PHYSICIANS' OPINIONS

5         Plaintiff argues that the ALJ improperly rejected or discounted the opinions of her

6    treating and/or evaluating physicians without giving adequate reasons for doing so.  Specifically,

7    Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Wood, Dr. Davis, and Dr.

8    Carlson.

9         As a general rule, more weight should be given to the opinion of a treating source than to

10   the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th

11   Cir. 1996) (citations omitted).  Where the treating doctor's opinion is not contradicted by

12   another doctor, it may be rejected only for "clear and convincing" reasons supported by

13   substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  If the

14   treating doctor's opinion is contradicted by another doctor, the ALJ may reject it if he provides

15   "specific and legitimate reasons" supported by substantial evidence in the record. *See Andrews*,

16   53 F.3d at 1043; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The ALJ can meet this

17   burden by setting out a detailed and thorough summary of the facts and conflicting clinical

18   evidence, stating his interpretation thereof, and making findings. *Cotton v. Bowen*, 799 F.2d

19   1403, 1408 (9th Cir. 1986).

20        Here, Plaintiff notes that there is conflict between the opinions of the DDS[1] physicians

21   and Plaintiff's treating sources.  Therefore, the "specific and legitimate reasons" standard for

22   evaluating the treating doctors' opinions is applicable here.

23

24   _____

25        [1]Division of Disability Determination Services.

26   REPORT AND RECOMMENDATION
     PAGE - 5

1      1.      Dr. Cheryl L. Wood, N.D.

2              Dr. Wood is a naturopathic physician who treated Plaintiff between October 1999 and

3      October 2002.  Tr. 156, 216, 232.  Plaintiff's only argument regarding Dr. Wood's opinion

4      concerns a medical source statement that Plaintiff contends is a form sent to Dr. Wood by the

5      Social Security Administration ("SSA").   The medical source statement indicates that Plaintiff's

6      physical impairments render her unable to stand, move about, lift, carry, or travel.  Additionally,

7      it indicates that Plaintiff is capable of sitting, hearing, speaking and seeing for only two-thirds of

8      a workday.  Tr. 215.  The medical source statement also indicates that Plaintiff's ability to

9      reason, understand and remember, sustain concentration, persistence, and pace, and socially

10     interact and adapt is limited by her mental impairments to one-third of a work day.  *Id.*

11             Plaintiff argues that the ALJ rejected this opinion by Dr. Wood because it was not signed

12     or dated.  Dkt. #15 at 20.  The record shows that the ALJ rejected this assessment both because

13     it was not signed by an acceptable medical source as noted in 20 C.F.R. § 404.1513, and because

14     there was not supportive documentation for these opinions.  Tr. 18.  In fact, careful review of

15     this  medical sources statement reveals that although it contains handwritten information

16     regarding Plaintiff's limitations, the underlying document does not appear to be a form for

17     inputting such information.  Instead, the document simply provides instructions and lists the

18     physical and mental impairments that were to be assessed by the treatment provider.

19     Furthermore, it is not clear an acceptable medical source under 20 C.F.R. § 404.1513 provided

20     the opinion in this medical source statement and it is not clear when it was prepared because it is

21     neither signed nor dated.  *See* Tr. 215.   Moreover, 20 C.F.R. § 404.1527(d)(3),which addresses

22     "supportability" as a factor considered by the SSA in deciding the weight to give any medical

23     opinion, states in pertinent part, "The better an explanation a source provides for an opinion, the

24     more weight we will give that opinion.  Thus, given that this medical source statement contains

25

26     REPORT AND RECOMMENDATION
       PAGE - 6

1   no explanation of the basis for the assessment it sets forth, the ALJ's decision to accord no

2   weight to the assessment is appropriate.   Accordingly, this Court concludes that the ALJ

3   provided specific and legitimate reasons, supported by substantial evidence in the record, for

4   rejecting the assessment set out on this MSS.

5          2.   <u>Frederick Davis, M.D.</u>

6          The record contains a single letter from Dr. Davis, who practices in the area of Child and

7   Adult Psychiatry.   Tr. 289.   In the letter, dated October 27, 2000, Dr. Davis indicates that he

8   had consulted with Plaintiff on three occasion and states that she "indeed does suffer from

9   Chronic Fatigue Syndrome."   *Id.*   Additionally, he states that some days [plaintiff] is entirely

10  incapacitated and can barely get out of bed, and other days she can do household chores.   Dr.

11  Davis opined that Plaintiff is "totally incapacitated with respect to any occupation."   *Id.*

12         Plaintiff argues that the ALJ rejected Dr. Davis' opinion because he had examined her

13  only three times.   Dkt. #15 at 20.   However, the record shows that this was not the reason the

14  ALJ gave for rejecting Dr. Davis's opinion.   Rather, the ALJ indicates that she gave little weight

15  to Dr. Davis' opinion because it does not contain significant explanation of the basis for his

16  conclusions.   Tr. 18. Additionally, the ALJ correctly notes that: 1) the record contains no

17  evidence such as progress reports or treatment notes reflecting that Dr. Davis ever treated

18  Plaintiff, and 2) Dr. Davis diagnosis is not within his medical specialty.   Since the Regulations

19  identify both the nature and extent of the treatment relationship (20 C.F.R. § 404.1527(d)(2)(ii))

20  and specialization (20 C.F.R. § 404.1527(d)(5)) as factors considered in determining the weight

21  of a medical opinion, this Court concludes that the ALJ has provided specific and legitimate

22  reasons for giving little weight to Dr. Davis' opinion.

23         3.   <u>Mark Carlson, M.D.</u>

24         Dr. Mark Carlson's treatment notes cover his treatment of Plaintiff from April, 1999

25

26  REPORT AND RECOMMENDATION
    PAGE - 7

1    through September, 2001, and the ALJ's decision accurately summarizes the content of his

2    notes. *See* Tr. 17-19. Plaintiff argues, however, that the ALJ erroneously rejected Dr. Carlson's

3    opinions because they were conclusory and provided little explanation of the opinions. Plaintiff

4    also contends that the ALJ rejected one of Dr. Carlson's opinions due to the fact that Plaintiff's

5    attorney asked for the opinion in question. Dkt. 15 at 20.

6        A review of the ALJ's decision shows that there are two instances where she either

7    questions the conclusory nature of Dr. Carlson's opinion or she indicates that there is no

8    objective evidence to support the opinion. *See* Tr. 18-19. The first instance concerns a March,

9    2000, letter prepared by Dr. Carlson, and the second instance involves a chronic fatigue

10   syndrome residual functional capacity questionnaire that Dr. Carlson prepared in February 2001.

11                          **a) Letter - March 15, 2000**

12       This letter from Dr. Carlson relates to the denial of long-term disability payments for

13   Plaintiff's "chronic fatigue syndrome and chronic headache problem exacerbated by work

14   activities making it difficult for her to continue in her work." Tr. 180. The ALJ summarized the

15   letter as follows:

16           In a letter dated March 15, 2000[,] addressed "to whom it may concern,"
         Dr. Carlson, the claimant's treating physician reported that the claimant met the
17       criteria of chronic fatigue syndrome. Dr. Carlson reported that the claimant also
         had a positive cytomegalovirus antibody, which certainly could be causing a art of
18       her chronic fatigue syndrome. In, Dr. Carlson's opinion, the claimant was unable
         to work secondary to her chronic fatigue. While Dr. Carlson believed that the
19       claimant was not malingering, he also reported that the claimant made slow steady
         improvement with ongoing rest and regimen of exercise and vitamin supplements
20       (Exhibit 4F).

21   Tr. 18. The ALJ noted that the opinion expressed is conclusory, providing little explanation of

22   the evidence relied on in forming the opinion. *Id.*

23   //

24   //

25

26   REPORT AND RECOMMENDATION
     PAGE - 8                                    8

b) **Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire**

Dr. Carlson completed a CFS questionnaire on February 28, 2001. Tr. 317-323. The ALJ's decision summarizes this document as follows:

> At the request of the claimant's attorney, Dr. Carlson filed a chronic fatigue syndrome residual functional capacity questionnaire in February 2001. Dr. Carlson opined that the claimant's symptoms of chronic fatigue syndrome included self-reported memory and concentration problems, tender cervical or axillary lymph nodes, muscle and joint pain, unrefreshing sleep and post exertional malaise. Due to the claimant['s] constant pain, Dr. Carlson opined that the claimant was incapable of even low stress jobs. He further opined that the claimant could sit, stand and walk no more than 20 hours in an eight-hour day. Every two hours, the claimant would need a 15 to 20 minute break. In Dr. Carlson's opinion, the claimant could not lift more than ten pounds and she would absence (sic) about four times a month. (Exhibit 11F).

Tr. 19. In evaluating this opinion, the ALJ emphasized that Dr. Carlson filled out the RFC evaluation through an attorney referral and in connection with an effort to generate evidence for the current appeal. *Id.* The ALJ noted that "although such evidence is certainly legitimate and deserves close attention, the context in which it was provided cannot be completely ignored." *Id.* The ALJ also observed that "there is no objective evidence to support Dr. Carlson's opinion." *Id.*

"An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Lester*, 81 F.2d at 832 (citing *Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D.Or. 1993)). Thus, the fact that Plaintiff's attorney asked Dr. Carlson to complete the chronic fatigue syndrome RFC evaluation is not an acceptable basis for rejecting Dr. Carlson's opinion. However, The ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

//

REPORT AND RECOMMENDATION
PAGE - 9

Here, although Dr. Carlson's letter references a cytomegalovirus antibody titer done by Dr. Wood (*see* Tr. 262) as support for his opinion that Plaintiff's cytomegalovirus infection could be causing part of her chronic fatigue syndrome, he points to no evidence in the record supporting his conclusion that Plaintiff is unable to work secondary to the chronic fatigue syndrome. Likewise, other than Plaintiff's self-reported symptoms, Dr. Carlson's RFC evaluation includes no reference to his objective clinical findings, nor does it provide an explanation of Plaintiff's response to treatment or the side effects of her medication – information that was specifically requested in question 9 of the RFC questionnaire. Tr. 318.

Moreover, immediately after noting that there was no objective evidence to support Dr. Carlson's RFC finding, the ALJ provides a clear summary of evidence of improvement in Plaintiff's condition that is reflected in Dr. Carlson's most recent chart notes. Specifically, the ALJ notes the following:

> The chart notes from Dr. Carlson dated June 2001 to September 2001 indicate that the claimant underwent two more cortisone injections for her plantar fasciitis with marked improvement. In August 2001, Dr. Carlson reported that the claimant's migraine headaches were markedly improved and controlled with medication. The claimant used Ultram intermittently to control her complaints of malaise and general body aches and pains. Dr. Carlson started the claimant on Topamax, as the claimant related that her daughter who also has fibromyalgia was doing well on this medication. In September 2001, the claimant had not had a headache in the past three weeks. The claimant felt that things were going very well and she was feeling excellent, other than a little anxiety due to the events fo September 11, 2001 (Exhibit 13F).

Tr. 19. While a review of the record reveals that Plaintiff experienced some "ups and downs" in her condition over the course of her treatment by Dr. Carlson, overall, there is a trend towards improvement as adjustments were made in Plaintiff's prescribed medications. In light of these facts, this Court concludes that the ALJ identified "specific and legitimate" reasons, supported by substantial evidence in the record, for rejecting Dr. Carlson's RFC assessment.

B.    PLAINTIFF'S CREDIBILITY

Plaintiff also alleges that the ALJ did not properly assess her credibility. If there is

REPORT AND RECOMMENDATION
PAGE - 10

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms because they are unsupported by medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. *See Lester* 81 F.3d at 834 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (8th Cir. 1989). The ALJ must identify what testimony she finds not credible and what evidence undermines the claimant's complaints . *See Dodrill v. Shalala*, 12 F.3d 915, 918 (1993). In assessing credibility, the ALJ may consider, for example: 1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying and prior inconsistent statements concerning the symptoms; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical evidence tending to discount the severity of subjective claims. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

In the present case, Plaintiff testified that she quit work because her fatigue was overwhelming, and her migraines had progressed over a period of time. Tr. 29. She stated that she has migraines every day or every other day and that Zomig gets rid of the migraines, but it takes an hour to one and one-half hours to take effect and then she has to wait two to five hours for the side effects to wear off. Tr. 31. She asserted that she is unable to do anything while waiting for the headache to go away because Zomig causes extreme drowsiness. *Id.* She also testified that she and her doctor had experimented with different medications for her headaches, which provide relief for a week or two but then the drugs stop working. Tr. 32-33. She stated that there is no medication that keeps her from having headaches. Tr. 33.

Plaintiff testified further that chronic fatigue completely limits her at home and at work. Tr. 34. She indicated that her husband does the housework and cooking because she cannot do functions around the house. *Id.* If she does a load of laundry, her daughter folds it and puts it

REPORT AND RECOMMENDATION
PAGE - 11

1    away.  Plaintiff stated that she can barely care for her own personal needs, having to go back to

2    bed after she takes a shower because she is exhausted.  *Id.*  She spends an average day in bed.

3    On a good day, she can go to the store and get two or three  items and do the laundry, but she

4    might have only one good day a month.  Tr. 35.  Her husband drives her everywhere because she

5    does not have the energy to drive or focus.    Plaintiff indicated that the heels of her feet are in

6    pain all the time, and she gets cortisone injections that temporarily take away the pain until the

7    cortisone wears off.  *Id.*   Plaintiff stated that she can only be on her feet for about five minutes

8    and she can only walk a few feet.  Tr. 36-37.  She testified that she knits once or twice a month,

9    but has difficulty focusing so she is unable to stay at it for very long. She also stated that she has

10   been depressed over not being able to function.  Tr. 37.  Additionally, she testified that she has

11   not seen a medical treatment provider this year [2002] because nothing has changed.   Tr. 38-39.

12        In describing her daily activities, Plaintiff testified that she normally gets up at 8:00 or

13   9:00 a.m., showers, feeds herself, does a load of laundry and then goes back to bed.  She stated

14   that she spends most of the day resting in bed, sometimes napping between 5:00 and 7:00 p.m.

15   She watches television while resting.   Tr. 42.  She is able to focus on reading only for few

16   minutes at a time.  She goes to bed at 9:30 or 10:00 p.m.  Tr. 43.

17        The ALJ identified several reasons for finding Plaintiff's statements regarding her

18   impairment and its impact on her ability to work not entirely credible.  First the ALJ notes that

19   although Plaintiff claims that she is disabled in part due to chronic daily migraine headaches, the

20   medical reports show that the headaches are greatly improved with medication.  Indeed, she

21   noted that in September 2001, claimant indicated that she had not had a headache in three weeks.

22   Further, the ALJ highlighted Plaintiff's own testimony that she has not seen a medical provider

23   this year as nothing has changed in her condition.  Tr. 21

24        Second, the ALJ indicated that Plaintiff described daily activities which are not limited to

25   the extent expected, given her complaints regarding her limitations.  In support of this reason, the

26

REPORT AND RECOMMENDATION
PAGE - 12

1   ALJ highlighted specific inconsistencies in Plaintiff's statements regarding her activities of daily

2   living at the initial level of review, at the reconsideration level, and at the hearing.  *See* Tr. 21.

3   In reviewing the specific activities Plaintiff described at the various review levels, there is

4   evidence of a higher level of daily activity at the initial review, minimal daily activity at the

5   reconsideration level, and a considerable an increase in activity at the time of the hearing before

6   the ALJ.

7           Third, the ALJ noted that while the claimant complained of chronic muscle and joint pain,

8   the medical evidence indicates that the claimant used Ultram for pain on an intermittent basis.

9   She also noted that while Plaintiff had occasional musculoskeletal "discomfort," the claimaint

10  was only in "minimal" distress upon examinations.  The ALJ concluded that the terms

11  "discomfort" or "minimal distress" indicated a lesser or lack of severe pain as compared to

12  "acute" or "severe" pain.  Tr. 21.

13          Fourth, the ALJ referred to an article in the file on Chronic Fatigue Syndrome, which

14  indicates that the chronic fatigue syndrome is associated with lymphadenopathy and equilibrium

15  disturbances that are identified on the tandum Romberg test.  The ALJ noted that upon

16  examination, the claimant had no lymphadenopathy and there was no evidence of a Romberg

17  test.

18          Finally, the ALJ noted that Plaintiff had secondary gain motivation since she was seeking

19  disability from her insurance company.  Tr. 21.  This reason, standing alone, is unconvincing

20  because nothing in the record suggests that an award of benefits by the SSA would necessarily

21  have any bearing on the insurance company's decision to pay Plaintiff any benefits.

22          When all the reasons identified by the ALJ are considered together, they demonstrate that

23  she properly evaluated both the objective medical evidence and Plaintiff's subjective symptoms as

24  required.  Accordingly, this Court concludes that the ALJ provided clear

25

26

REPORT AND RECOMMENDATION
PAGE - 13

1   and convincing reasons for finding Plaintiff statements regarding the limitations from her

2   impairments not entirely credible.

3   C.      OTHER IMPAIRMENTS

4           Plaintiff argues that the ALJ erred in not considering all of her alleged impairments

5   including plantar fasciitis (a painful condition in the heel of the foot), obesity, depression, and the

6   side effect of medications.

7           The ALJ only discussed plantar fasciitis in her opinion.  Tr. 18-19.   However, the ALJ

8   did not err in not finding that the plantar fasciitis was a severe impairment because all the

9   evidence in the record indicated that cortisone injections Plaintiff received for this condition were

10  working.  Tr. 19, 313, 325.

11          The record contains some self-reported complaints from Plaintiff regarding weight gain

12  (Tr. 197, 198); however, none of her treating physicians assessed that she was obese or that she

13  was in any way impaired by alleged obesity.  Furthermore, the only mention of mild depression in

14  the record (Tr. 313) was not based on a psychological assessment.  Rather it was, as Dr. Carlson

15  stated, possibly related to CFS and fibromyalgia.  Additionally, the alleged side effect of

16  medications was reported by Plaintiff on only one occasion, in her testimony at the hearing.  Tr.

17  31.  The record contains no notations from Plaintiff's treatment providers indicating that Plaintiff

18  was functionally impaired due to side-effects from her medications.  The symptom of extreme

19  fatigue which Plaintiff was experiencing was attributed by her medical providers to other

20  impairments and not her medications.   Therefore, this Court concludes that the ALJ did not err

21  in not considering these alleged impairments in her RFC assessment.

22  D.      RFC ASSESSMENT

23          Plaintiff argues that the ALJ's RFC assessment is erroneous because the ALJ did not

24  consider the physical and mental requirement of Plaintiff's past work, did not consider all of

25

26

REPORT AND RECOMMENDATION
PAGE - 14

Plaintiff's impairments[2], and did not perform a function-by-function assessment of limitations.

A claimant's RFC is based on what she can still do despite her limitations. *See* 20 C.F.R. § 416.945(a). At the hearing level, the ALJ evaluates a claimant's RFC at step four of the sequential evaluation process by considering all of the evidence, including any physical and mental limitations. *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p. SSR 96-8p provides that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." The ALJ is free to accept or reject restrictions the claimant alleges provided that his findings are supported by substantial evidence. *Magallanes*, 881 F.2d at 756-57.

While it is true that the ALJ did not make a function-by-function assessment of work related abilities, she did rely on the function-by-function RFC assessment made by the State Agency phsyician. Specifically, the ALJ indicates that she accorded weight to the opinions of the reviewing professionals at Washington State Agency, who reviewed the record at the initial and reconsideration levels of review. She also indicates that she relied heavily upon the opinion of the medical expert, Dr. Burnell. Tr. 22.

Dr. David Deutsch of the State Agency made a function-by-function assessment (Tr. 304-309) and concluded that Plaintiff has the RFC to carry 20 pounds occasionally, carry 10 pounds frequently, stand and walk for 6 hours in an eight hour day (with normal breaks), sit for six hours in an eight hour workday (with normal breaks), and can push or pull without problems. In explaining his assessment of Plaintiff exertional limitations, Dr. Deutsch noted that Plaintiff's lab reports from October 1999 through October 2000 showed that her CMV [cytomegalovirus] load was decreasing. He also indicated that his RFC assessment was "giving the benefit of

---

[2]In regards to the ALJ's alleged failure to consider Plaintiff's other impairments, based on the foregoing discussion in section "C," this argument is without merit.

REPORT AND RECOMMENDATION
PAGE - 15

fatigue". Further, Dr. Deutsch noted that Plaintiff's PMD opined in March 2000 that she was unable to work due to CFS and chronic headaches, but no functional limits were given. Lastly, Dr. Deutsch summarized the extent of Plaintiff's activities of daily living, including "washes dishes, does laundry, makes bed, grocery shops once per week, drives 10 miles, can't scrub floors, can read one-half hour an, watch t.v. one-half hour, and knit one-half hour at a time." Tr. 305-306. There is substantial evidence in the record to support these conclusions by Dr. Deutsch.

The medical expert, Dr. Burnell, reached the same conclusion regarding Plaintiff's RFC. He concluded that Plaintiff can perform light work, and thus, was able to perform her past relevant work. The ALJ notes that his conclusion was based on a review of the entire record as well as the hearing testimony. She found that his testimony was impartial, well-reasoned and persuasive, and supported by the evidence from Plaintiff's treating sources.

Having concluded that the ALJ did nor err in evaluating Plaintiff's credibility and rejecting the opinions of Plaintiff's treating physicians regarding her functional limitations, the undersigned concludes that the ALJ properly considered the evidence before her and that her decision regarding Plaintiff's RFC was based on substantial evidence.

## VIII. CONCLUSION

The Commissioner's decision to deny Plaintiff disability insurance benefits is supported by substantial evidence and is free of legal error. Based on the record evidence, the undersigned recommends that the Commissioner's decision be affirmed.

DATED this  4th  day of March, 2005.


                                        s/ Monica J. Benton
                                        MONICA J. BENTON
                                        United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 16