1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6   MARY E. WALKER,

7                    Plaintiff,                              No. C03-2866-MJP

8        v.                                                  ORDER ON PLAINTIFF'S
                                                             OBJECTIONS TO REPORT AND
9   JO ANNE B. BARNHART,                                     RECOMMENDATION ON DENIAL
    Commissioner of Social Security                          OF SOCIAL SECURITY DISABILITY
10                                                           BENEFITS
                     Defendant.
11

12

13          This matter comes before the Court on Plaintiff's objections to the Report and

14   Recommendation ("R&R") from Magistrate Judge Monica J. Benton ("Magistrate") affirming the

15   Social Security Administration's ("SSA") denial of Plaintiff's application for Social Security Disability

16   Insurance Benefits ("DIB") under Title II of the Social Security Act. Having considered Plaintiff's

17   objections to the R&R, the government's response to Plaintiff's objections, and the administrative

18   record from the SSA, the Court hereby ACCEPTS the Magistrate's recommendation and AFFIRMS

19   the denial of benefits by Defendant Jo Anne Barnhart, Commissioner of the SSA. In addition, the

20   Court reviewed a letter Plaintiff wrote to the Court on May 10, 2005, but the arguments raised in it

21   have not altered the Court's conclusion. Plaintiff has not shown that the administrative law judge's

22   ("ALJ") decision was based on legal error or lacked support from substantial evidence in the record.

23   In addition, where evidence is susceptible to differing interpretations, Ninth Circuit case law requires

24   the Court to give deference to the ALJ's determinations.

25

1

2                                          **BACKGROUND**

3          Plaintiff Mary E. Walker, a substance abuse counselor, applied for DIB on October 2, 2000.

4    She alleges that she became disabled on September 1, 1999 due to chronic daily migraines, chronic

5    fatigue syndrome, and fibromyalgia.

6          The SSA twice denied Plaintiff's application for DIB. She challenged the decision a third time

7    at a hearing before ALJ Ruperta M. Alexis. Plaintiff was represented by counsel and testified at the

8    hearing. Applying the SSA's five-step analysis, see 20 C.F.R. § 404.1520, the ALJ found that Plaintiff

9    has an impairment or a combination of impairments considered "severe" as defined by 20 C.F.R. §

10   404.1520(b). However, the ALJ concluded that the impairment(s) did not meet or medically equal a

11   "listed" impairment that the Secretary has acknowledged to be so severe as to preclude substantial

12   gainful activity. 20 C.F.R. § 404.1520(d). The ALJ then found that the Plaintiff had the ability, despite

13   her impairments, to perform her "past relevant work" as a substance abuse counselor. (Administrative

14   Record ("AR") at 23). Because of this, the Plaintiff was found to be not disabled.

15         At Plaintiff's request, the SSA Appeals Council reviewed and affirmed the ALJ's decision on

16   August 21, 2003, rendering the ALJ's decision the final decision of Defendant Barnhart. Plaintiff then

17   appealed to district court, and on March 4, 2005 the Magistrate issued her R&R, affirming the ALJ's

18   denial of benefits. The Magistrate found that the ALJ's decision was supported by substantial evidence

19   and free of legal error. In her motion, Plaintiff objected to the R&R on several grounds.  Specifically,

20   she challenged the ALJ's: 1) rejection of her physicians' opinions; 2) conclusion that Plaintiff was "not

21   entirely credible" in describing limitations from her impairments; and 3) disregard for Plaintiff's alleged

22   obesity. In addition, Plaintiff alleged that a consulting physician was biased against her and, thus, his

23   opinion should be rejected.

24                                          **DISCUSSION**

25

1    The Court reviews de novo the Magistrate's recommendation to affirm the ALJ's denial of

2    benefits. That review, however, is not without limit. A court may set aside a denial of social security

3    benefits only when the ALJ's findings are based on legal error or are not supported by substantial

4    evidence in the record as a whole. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial

5    evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but

6    "less than a preponderance." Desrosiers v. Sec'y of Health and Human Services, 846 F.2d 573, 576

7    (9th Cir. 1988). Substantial evidence is relevant evidence that a reasonable person might accept as

8    adequate to support a conclusion. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). If the

9    evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court

10   may not substitute its judgment for that of the Secretary of Health & Human Services ("Secretary").

11   Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

12   A claimant carries the initial burden of proving a disability. 42 U.S.C. § 423(d)(5); Swenson v.

13   Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). But if a claimant establishes an inability to continue her

14   past work, the burden shifts to the SSA Commissioner to show that a claimant can perform other

15   substantial gainful work. Id. at 687.

16   Plaintiff's objections to the R&R essentially restate her positions before the Magistrate. In

17   addition, Plaintiff's letter to the Court raised several new objections and elaborated on others. While

18   this letter violates Local Rule GR (2)(f)(1) forbidding direct contact between the Court and parties

19   represented by counsel, the Court considered the letter in the interest of finality.

20   **I. Treating Physicians' Opinions**

21   Plaintiff argues that the ALJ improperly discounted statements from three physicians, Drs.

22   Cheryl L. Wood, Frederick Davis and Mark Carlson, and erred by not contacting the doctors for

23   additional information.

24   Ninth Circuit case law holds that more weight should be given to the opinion of a treating

25   doctor than to a non-treating physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). However,

ORDER - 3

1  an ALJ may reject a treating doctor's opinion if it is contradicted by another doctor or is internally

2  inconsistent and the ALJ provides "specific and legitimate reasons" supported by substantial evidence

3  in the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

4  **A. Lack of support for conclusory statements**

5  Here, the ALJ declined to give controlling weight to the opinions in question because they

6  lacked supporting evidence or explanation. For example, the ALJ gave no weight to a "medical source

7  statement" reportedly from Dr. Wood because it was undated, lacked a signature from an acceptable

8  medical source, and was not accompanied by any supporting documents. Moreover the medical source

9  statement appears to contradict notes from Dr. Wood indicating improvements in Plaintiff's fatigue,

10  headaches and sleep patterns. (AR at 17).

11  Likewise, the ALJ rejected a letter from Dr. Davis, in which he opined that Plaintiff suffers

12  from chronic fatigue syndrome and was "totally incapacitated with respect to any occupation." (AR at

13  289). The ALJ cited the lack of support for Dr. Davis's conclusions. This was not, however, the sole

14  basis for the ALJ's rejection of the letter. She also cited the lack of evidence that Dr. Davis ever

15  treated the Plaintiff and questioned the appropriateness of Dr. Davis's diagnosis given his speciality in

16  an unrelated field (adult and child psychiatry). (AR at 18).

17  Finally, the ALJ discounted a chronic fatigue syndrome residual functional capacity ("RFC")

18  questionnaire submitted by Dr. Carlson in February 2001. Dr. Carlson opined that Plaintiff was

19  incapable of even low-stress jobs and could not sit, stand or walk for more than two hours in an eight-

20  hour day. The ALJ concluded that this opinion lacked supporting evidence. Moreover, she found

21  contradictory evidence in Dr. Carlson's chart notes, such as a notation describing a "marked

22  improvement" in Plaintiff's headaches and self-reported symptoms. (AR at 19).

23  **B. Completeness of Medical Record**

24  Plaintiff argues that rather than rejecting the doctors' opinions as conclusory, the ALJ had a

25  duty to contact the doctors for clarification and supporting evidence.

Because social security hearings are non-adversarial proceedings, SSA regulations require an ALJ to fully develop the record related to a claimant's application before making a disability determination. 20 C.F.R. § 404.1512(d) ("[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . "). See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). This duty may include re-contacting a claimant's physician for clarification of an opinion, but this duty "arises only if a crucial issue is undeveloped." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Accord Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (An ALJ "need recontact medical sources only when the evidence received is inadequate for the ALJ to determine whether the claimant is disabled"). Finally, reversal of an ALJ's decision due to failure to develop the record is warranted only where such failure is unfair or prejudicial. See Ellis, 392 F.3d at 994.

Here, there is no indication Plaintiff's record was incomplete. Contrary to the Plaintiff's argument, neither the ALJ nor the Magistrate indicated the need for more information to make their disability determinations. In addition, the Plaintiff has not sought to supplement the record in connection with her argument that the ALJ had a duty to contact the doctors. Nor has she shown that the ALJ's alleged failure to fully develop the record resulted in unfair prejudice. Moreover, the ALJ's characterization of the doctors' opinions as conclusory was not the sole basis for her decision to reject them. Rather, the ALJ relied on a number of other medical records from Plaintiff's physicians and the opinion of a consulting physician who reviewed the records. In sum, the ALJ offered "specific and legitimate" reasons for giving little weight to the doctors' opinions.

**II. Plaintiff's Credibility**

Plaintiff's credibility is critical to her application for disability benefits because of the nature of her impairments. In general, chronic headaches, chronic fatigue syndrome and fibromyalgia are diagnosed largely on the basis of patient complaints, rather than objective medical evidence. Thus, the

ALJ's assessment of Plaintiff's impairments and ability to work hinges to a large degree on her credibility.

Ninth Circuit case law holds that if there is medical evidence of an underlying impairment, an ALJ may not discredit a claimant's testimony on the severity of her symptoms because they are unsupported by medical evidence. Moreover, an ALJ's reasons for rejecting a claimant's testimony must be clear and convincing in the absence of affirmative evidence showing a claimant is malingering. See Lester, 81 F.3d at 834. In assessing credibility, the ALJ may consider: ordinary techniques of credibility evaluation, such as a claimant's reputation for lying and prior inconsistent statements concerning the symptoms; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; a claimant's daily activities; and medical evidence tending to discount the severity of subjective claims. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989); Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

The ALJ's conclusion that Plaintiff's statements regarding her limitations were "not totally credible" (AR at 23) was based on several factors. Among them: Plaintiff's statements about her daily activities; treatment notes showing Plaintiff's headaches improved with medication and that she was headache-free for three weeks in September 2001; Plaintiff's intermittent use of pain medication despite complaints of chronic plain; and Plaintiff's testimony that she had not sought medical care for her impairments the year of the administrative hearing (January to April, 2002). (AR at 21).  Plaintiff's objections to several of these factors are discussed below.

**A. Plaintiff's Statements Regarding Her Daily Activities**

Plaintiff asserts that the ALJ and Magistrate erroneously concluded she made inconsistent statements to SSA regarding her daily activities. Plaintiff also accuses the ALJ of quoting her statements out of context.

In citing Plaintiff's statements as a reason for questioning her credibility, the ALJ noted that Plaintiff "has described daily activities, which are not limited to the extent one would expert [sic], given the complaints of disabling symptoms and limitations and she has made inconsistent statements regarding her activities of daily living." (AR at 21). For example, Plaintiff initially reported that she was able to load the dishwasher, make her bed, wash a load of laundry, cook for herself at times, grocery shop once a week, drive up to 10 miles, and read or watch TV for a half hour at a time. (AR at 21, 117-19). At the reconsideration level of review, she reported that her husband did all the household chores, that she was unable to drive at all due to fatigue, that she read at only a minimal level due to a lack of focus, and that she had no hobbies or interests. (AR at 139-42). Finally, at the administrative hearing, Plaintiff stated that on most days she returned to bed after showering due to fatigue. (AR at 34). On a "good day," she stated, she did a load of laundry and purchased a few groceries if her husband drove her to the store. (AR at 36).

Plaintiff refutes the ALJ's "inconsistent statements" conclusion and asserts that the initial "Daily Activity Questionnaire" is consistent with her later written and oral statements. She notes that on the initial questionnaire she stated: she could not walk or stand for even an hour before needing rest; she grew tired from light household chores; she relied on her husband to cook at times; she was unable to scrub floors or to vacuum; she rested during the day; and on some days she was unable to do any work at all. (AR at 117-19).

Based on a review of the administrative record, both the ALJ and Plaintiff offer reasonable interpretations of Plaintiff's statements. In such situations, it is the ALJ's conclusion that must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) ("[I]n reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence"). See also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

**B. Plaintiff Did Not See a Medical Provider In the Four Months Prior to the Administrative Hearing**

In her letter to the Court, Plaintiff objects to the ALJ and Magistrate noting, as part of their credibility assessments, that she had not seen a medical provider during the four months prior to the April 2002 administrative hearing.

Ninth Circuit case law permits an ALJ to consider an unexplained or inadequately explained failure to seek treatment in assessing credibility. Fair, 885 F.2d at 604. ("If [Plaintiff's] pain is not severe enough to motivate him to seek treatment or follow his doctor's advice, and if [Plaintiff] remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that his pain prevents him from returning to his former job.")

Here, Plaintiff testified that she had not seen a medical provider in 2002 (other than a chiropractor) because "nothing has changed." (AR at 39). As with Plaintiff's statements about her daily activities, different inferences can be drawn as to whether Plaintiff's statement amounted to an adequate explanation for her failure to see a doctor in 2002.

**C. Plaintiff's Intermittent Use of Ultram For Pain**

Plaintiff objects to the ALJ's statement that she used Ultram for pain on an "intermittent basis" despite her complaints of "chronic muscle and joint pain." (AR at 21). Plaintiff's argument on this point has no merit.

The ALJ cites the frequency with which Plaintiff takes Ultram to support her conclusion that, on the whole, Plaintiff's statements regarding her impairments are not entirely consistent with objective medical evidence in the record. Plaintiff argues that Dr. Carlson prescribed Ultram for pain and directed that it be taken on a daily basis, yet she never asserts that she actually took the

medication on a daily basis. Moreover, chart notes from Plaintiff's visit to the Everett Clinic on June 28, 2000 state that Plaintiff "uses Ultram occasionally." (AR at 183).

### D. Improper Consideration of Secondary Gain Motivation

Plaintiff faults the ALJ for finding that she had a "secondary gain motivation" in seeking social security disability benefits because she was simultaneously seeking disability from her insurance company. This objection is valid. However, the Magistrate properly rejected the ALJ's finding as "unconvincing." (R&R at 13). Thus, the Magistrate did not consider "secondary gain motivation" in affirming the ALJ's credibility assessment.

Given all the factors discussed above, the ALJ provided "clear and convincing" reasons for finding Plaintiff's statements about her limitations and ability to work not entirely credible. While several of the factors on which the ALJ relied are based on evidence susceptible to different interpretations, the standard of review in such cases requires the Court to give deference to the ALJ's analysis. Fair, 885 F.2d at 604 ("Credibility determinations are the province of the ALJ").

### III. Alleged Bias by Consulting Physician

Plaintiff asserts that Dr. James M. Burnell, a consulting physician under contract with SSA, was biased and unqualified to offer an opinion as to whether Plaintiff suffers from chronic fatigue syndrome or fibromyalgia. Because of this, she argues, his opinions should be rejected.

In support of her bias allegation, Plaintiff cites Dr. Burnell's testimony during the administrative hearing. When asked whether there was evidence showing Plaintiff experienced symptoms of chronic fatigue syndrome, including low-grade fevers, chronic sore throats and swollen glands, he replied: "No I believe not." (AR at 55). Later, when questioned by Plaintiff's attorney about a letter from Dr. Wood describing such symptoms, he acknowledged reading the letter but discounting

the statement because "objective criteria . . . don't exist" for the symptoms. From this testimony, Plaintiff concludes Dr. Burnell "lied about certain evidence in the record." (Pl.'s Mot. at 6).

Dr. Burnell's testimony shows that he questioned Plaintiff's symptoms and multiple  diagnoses after reviewing the entire medical record. Moreover, the ALJ described Dr. Burnell as "well qualified to render an opinion" on Plaintiff's condition, adding that his "impartial testimony was well reasoned and persuasive." (AR at 22). Plaintiff may disagree with Dr. Burnell's conclusions, but she has offered nothing to show that he deliberately lied or was motivated by bias.

**IV. Obesity**

Plaintiff contends that the ALJ improperly disregarded her alleged obesity in assessing her RFC to work. Plaintiff implies that the ALJ should have considered the interactive effects of her alleged obesity with other impairments. On this ground, she asks that her case be remanded for a new hearing. Defendant responds that Plaintiff has not advanced any theory or evidence on how her alleged obesity might affect her work.

As noted above, Plaintiff bears the burden of proving a disability. See Swenson, 876 F.2d at 687. This includes proving that she has "an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch, 400 F.3d at 683. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Id. According to Social Security Rules, this evidence must appear in the record, from which a case should be evaluated. SSR 02-01p (2002).

As in Burch, the Plaintiff here has not "pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." Burch, 400 F.3d at 683. In addition, the record here does not indicate that Plaintiff's obesity exacerbated her other impairments. Id. at 682. Plaintiff correctly notes that Social Security Rules allow for a diagnosis of obesity to be made when

ORDER - 10

supported by clinical notes or other medical records consistent with high body weight or BMI. However, Plaintiff does not assert that such evidence exists here; nor does she cite to evidence in the record that would support such a diagnosis.

The Magistrate's report makes only brief mention of Plaintiff's alleged obesity. It acknowledges Plaintiff's "self-reported complaints" of weight gain, but notes that none of Plaintiff's treating physicians diagnosed her as obese or impaired by obesity. The Magistrate thus concluded that the ALJ did not err in failing to consider Plaintiff's alleged obesity as part of the RFC assessment.

The Magistrate's assessment of the ALJ's analysis appears sound, based on the absence of evidence in the record and Plaintiff's failure to put forth a theory of how her alleged obesity has affected her ability to work.

**V. Lack of Consideration of Fatigue**

A final issue is whether the ALJ adequately considered the key symptom of chronic fatigue syndrome – extreme fatigue – in evaluating Plaintiff's ability to work. Plaintiff does not raise this issue directly, though it is closely linked to the assessment of her credibility.

Social Security regulations define a claimant's RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404.1520, subpt. P, App. 2 § 200.00(c). In Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998), the Ninth Circuit reversed and remanded a denial of social security disability benefits, in part, because the ALJ's evaluation of the claimant's RFC to perform her past work as a payroll clerk improperly ignored persistent fatigue from chronic fatigue syndrome. Because of this, the Ninth Circuit found that the ALJ's conclusion on the claimant's RFC to work was "not supported by substantial evidence." Id. at 725.

Here, the ALJ analyzed the physical demands of working as a substance abuse counselor (AR at 21-22), but made only a brief reference to Plaintiff's fatigue: "[E]ven if the claimant's fatigue limited her to sedentary to light work, she would still be able to return to her job as chemical dependency counselor." (AR at 22). However, in <u>Reddick</u> the medical evidence was stronger and far more extensive. For example, five doctors agreed with the chronic fatigue syndrome diagnosis, a sixth agreed the diagnosis was possible, and a seventh diagnosed a generic "fatigue syndrome." <u>Reddick</u>, 157 F.3d at 723. In addition, the Plaintiff in <u>Reddick</u> had tested positive for the Epstein-Barr antibody, which is frequently associated with chronic fatigue syndrome, and had undergone years of testing to rule out other diagnoses, such as thyroid problems, anemia, lyme disease and renal failure. <u>Id.</u> at 720.

## CONCLUSION

The Court ACCEPTS the Magistrate's recommendation and AFFIRMS the ALJ's denial of benefits. Plaintiff has not shown that the ALJ's decision was based on legal error or lacked support from substantial evidence in the record. In addition, where evidence is susceptible to differing interpretations, Ninth Circuit case law holds that deference must be given to the ALJ's conclusions.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: June 2, 2005


/s/ Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER - 12